## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## TEXARKANA DIVISION

**JUSTIN CRAVEN, Individually and On**                              **PLAINTIFF**
**Behalf of All Others Similarly Situated**

**V.**                      **CASE NO. 4:19-CV-04115-SOH**

**NEELEY'S SERVICE CETNER, INC.,**                             **DEFENDANTS**
**And ALFRED NEELEY**

## BRIEF IN SUPPORT OF RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

Defendants, Neeley's Service Center, Inc. (NSC) and Alfred Neeley (Neeley), in his individual capacity (collectively, "Defendants"), by and through their undersigned attorneys, Cross, Gunter, Witherspoon & Galchus, P.C., and for their Brief in Support of Response in Partial Opposition to Plaintiff's Motion for Conditional Certification, state:

### I.    INTRODUCTION

Plaintiff filed his Complaint on September 11, 2019.  *See* ECF No. 2.  He has since Amended his Complaint to add a claim of disability discrimination.  *See* ECF No. 20, ¶ 3. Plaintiff asserts claims both individually and as a collective action pursuant to the Fair Labor Standards Act (FLSA).  *Id*.  Specifically, Plaintiff alleges that he and other non-exempt tow truck drivers were not compensated for all hours worked.  *Id*. at ¶¶ 54-58.  Plaintiff has filed his Motion seeking to conditionally certify a class of "all tow truck drivers within the last three years."  *See* ECF No. 15, ¶ 3.  Defendants' proposed class is overbroad for purposes of Plaintiff's claims in this lawsuit.  Notably, Plaintiff only worked for NSC at its location in Nashville, Arkansas.

Defendants deny many of Plaintiff's allegations, including that Plaintiffs were employed by Alfred Neeley, in his individual capacity.  However, at this stage, Defendants do not oppose

Plaintiff's request to conditionally certify a putative class that is modified to include any hourly-paid employees who operated a tow truck for NSC at its location in Nashville, Arkansas, at any time since February 14, 2017. This collective action class definition will include all persons similarly-situated to Plaintiff and adequately addresses collective claims arising in this lawsuit in accordance with applicable standards under the FLSA.

## II.     ARGUMENT

Defendants understand that this Court is well versed in the applicable two-step approach for determining whether to certify a collective action pursuant to Section 216(b) of the FLSA. In the first stage or "notice stage," the plaintiff bears the burden of proof and must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Wheeler,* 2011 WL 5402446*,* at *1-2. After completion of discovery, the court uses a more stringent analysis to determine whether the members of the class are actually similarly situated. *Id.*[1] Although lenient, the burden at the initial stage is not "invisible." *Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159, 1164 (D. Minn. June 25, 2007).

The power to authorize notice must be exercised with discretion and only in appropriate cases. *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 944 (W.D. Ark. April 15, 2003). A plaintiff "may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations." *Wheeler*, 2011 WL 5402446*,* at *2. Mere averments in a complaint are not enough. *West v. Border Foods, Inc*., Case No. 05-2525, 2006 WL 1892527, at *3 (D. Minn. July 10, 2006). Further, courts have made clear that the responsibility to intervene in the management of this type of litigation begins when the case is filed. *Freeman*, 256 F. Supp.

---

[1] The Eighth Circuit has set forth the proper standard for determining "similarly situated" at the second stage. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014).

2

2d at 945. Indeed, this Court has held that it has a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Id.* (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. June 27, 1991)).

Neither the Act nor the regulations define what "similarly situated" means. *Zezanski v. First Step, Inc.*, 2017 WL 11446916, at *2 (W.D. Ark. June 27, 2017). District courts within the Eighth Circuit have considered a variety of factors when determining whether plaintiffs and proposed class members are "similarly situated" at the notice stage. These factors include: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Id*. at *2-3. Also, a "job title is not dispositive, whether a named plaintiff and potential collective action plaintiffs share a common job title is a factor to consider in making the initial "similarly situated" determination." *Id*. at *3.

### A. Plaintiff's Proposed Class Definition is Overbroad and Should Be Limited to NSC's Nashville location.

While the burden of proof at this stage is not onerous, it does exist, and self-serving statements in an affidavit are not sufficient evidence to justify the broadly worded class proposed by Plaintiff. NSC operates two service centers in Arkansas: one in Texarkana and one in Nashville. *See* Jason Neeley Declaration, ¶ 3, attached to Defendants' Response as Exhibit 1 (hereinafter "Neeley Dec."). Plaintiff only worked for NSC at its location in Nashville, Arkansas. *See* ECF No. 15-6, ¶ 7; *see also* Neeley Dec., ¶ 4. He never worked at the Texarkana location and does not allege that he ever did. *Id*. Notably, he was not employed as a tow truck

driver (he was a Tire Technician), but he did provide back-up towing services, as needed, so that distinction is only form over function at this point. *See* Neeley Dec., ¶ 4.

Further, the type of business operations, work schedules, personnel, and management varied between NSC's two locations. *See* Neeley Dec., ¶¶ 3-5. Plaintiff offers no evidence or even allegation as to what personal knowledge he has with respect to the operations at NSC's Texarkana location, its timekeeping policy, schedules, or how other tow truck drivers allegedly worked. Furthermore, there were different supervisors and managers between the locations, and no personnel ever worked between or among both locations. *Id.* at ¶ 3. Plaintiff's allegations are based entirely upon "off-the-clock" work and his scheduled work hours, which is individualized in nature. However, among different locations and different supervisors over different work schedules, the distinctions between locations are insurmountable even at this first stage of conditional certification.

The attempted class definition reaches too far based on Plaintiff's lack of knowledge alone. Plaintiff makes only blanket assertions about his job title and work schedule, but he states nothing about any other affected employee(s). *See* ECF No. 15-6, ¶¶ 12-13. Plaintiff also fails to identify any work performed by any other putative class member at NSC's Texarkana location. *See id.* "Conclusory affidavits from [a …] named plaintiff who had limited experience outside of his locale will not suffice to make a modest factual showing that other employees in a multi-state region are similarly situated for FLSA purposes." *McLendon v. Schlumburger Tech. Corp.*, 2016 WL 3911897, at *6 (E.D. Ark. July 15, 2016).

Further, any tow truck drivers at NSC's Texarkana location are likely exempt from overtime under the Federal Motor Carrier Safety Act. Drivers qualify for the Motor Carrier

Exemption so long as they are driving a motor vehicle weighing more than 10,000 pounds[2] in *interstate* or foreign commerce. 29 C.F.R. § 782.2(b)(3) (emphasis supplied). The "interstate commerce" requirement is met even where goods in intrastate commerce are viewed in "one leg of an interstate journey." *See* Roberts v. Levine, 921 F.2d 804, 810-14 (8th Cir. 1990); *see also Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1215 (11th Cir. 2011) (analyzing multiple cases that "make clear that trips within a single state are made in interstate commerce when they are part of a practical continuity of movement of the goods in interstate commerce"); *see also* 29 C.F.R. § 782.7(b)(1).  Indeed, the Motor Carrier Exemption defines "Drivers" to include "[i]ndividuals whose driving duties are concerned with transportation, some of which is in intrastate commerce and some of which is in interstate or foreign commerce." 29 C.F.R. § 782.3(a).

Plaintiff, however, contends that he never drove across state lines. *See* ECF No. 20, ¶ 29. Regardless of the merits of this claim, his own statement differentiates himself (and other drivers at the Nashville location) from tow truck operators in the Texarkana location. *See* Neeley Dec., ¶ 3(c).  While the merits need not be addressed at this time, this is an important distinction between the similarity of representative evidence Plaintiff can offer on behalf of his proposed collective class.  Accordingly, Plaintiff has not met even his lenient burden of showing the

---

[2] Congress passed legislation amending the definition of a "commercial vehicle" to include a vehicle that has a gross vehicle weight of over 10,0001 pounds. *See McCall v. Disabled American Veterans Ernestine Schumann-Heink Missouri Chp. 2, et al.*, Case No. 11-1298-CV-W-ODS, pp. 3-4 (W.D. Mo. July 27, 2012) (discussing in detail the state of the law for the Motor Carrier Exemption), attached to Defendant's Motion for Summary Judgment as Exhibit P.  That Act decreed that the overtime provisions contained in the FLSA would apply to a "covered employee," which it defined to include a driver of a motor vehicle "weighing 10,000 pounds or less." *Id*. (*citing* Pub. L. No. 110-244, Title III, § 306 (2008)).  Thus, where evidence establishes that a driver operates a vehicle with a gross vehicle weight of *over* 10,001 pounds, summary judgment is appropriate on any overtime claims brought by that driver.  *See McCall*, Case No. 11-1298-CV-W-ODS, p. 5 (granting summary judgment to employer on employee's FLSA overtime claims).

factual similarities among himself and tow truck drivers in Texarkana, and his class should be limited to NSC's Nashville location.

Thus, the putative class definition should be limited to any hourly-paid employees who operated a two truck at its location in Nashville, Arkansas, at any time since February 14, 2017. This class of workers who Plaintiff has actual knowledge of potential claims is adequate based on the facts and allegations contained in Plaintiff's Amended Complaint and in this Response. Conditionally certifying Plaintiff's proposed class without modification goes beyond the purposes of the FLSA. *See Freeman*, 256 F. Supp. 2d at 945.

### B. Plaintiff's Request for Email and Text Messaging Is Unnecessary and Unduly Burdensome.

Subject to the modified class definition set forth above, Defendants do not oppose the issuance of the proposed Notice and Consent forms by regular mail, reminder postcard, and/or physical posting at the Nashville location. However, Defendants oppose Plaintiff's remaining requests relating to distribution of the class notice documents.

First, Defendants do not know whether the phone numbers they possess are "land line" or cellular phone lines but are willing to provide them if deemed appropriate by the Court.

Second, distribution by email is unnecessary. Defendants do not oppose the distribution of the Notice and Consent forms via U.S. Mail, a reminder postcard, and physical posting. Notably, Plaintiff makes no allegation of any work-related communication with NSC via email or otherwise providing email. *See* ECF No. 15-6. To be sure, NSC does not require employees to disclose an email address. Furthermore, redundant transmissions of the same Court-approved Notice could be interpreted as an endorsement of the lawsuit, which is inappropriate. *See Cruthis v. Vision's*, No. 4:12CV244 KGB, 2013 WL 4028523, at *8 (E.D. Ark. Aug. 7, 2013); *Teramura*, 2013 WL 12171862 at *4; *Knispel v. Chrysler Grp. LLC*, No. 11 11886, 2012 WL

6

248390-2

553722, at *8 (E.D. Mich. Feb. 21, 2012); *Temura v. Walgreen, Co.*, 2013 WL 12171862, *4 (W.D. Ark. March 7, 2013) ("The Court sees no reason why distribution of the Notice by first-class mail would be insufficient. Therefore, it will deny Plaintiff's request to communicate with potential plaintiffs by telephone, email, or website."). This burdensome request will only add additional time and expense to the issuing of any notices, even though two mailings will be sent to the potential class members and posted at the worksite.

Third, NSC should be afforded fourteen (14) days to distribute the putative class contact information after receipt of this Court's forthcoming order on Plaintiff's Motion.

Finally, the opt-in period should be limited to 60 days, which is ample time to distribute the notices, reminder postcards after 30 days, and physical posting at its Nashville location.

### C. Plaintiff's Proffered Notice of Right to Join Lawsuit Should be Edited.

Generally, Defendants do not oppose the proffered Notice of Right to Join Lawsuit. *See* ECF No. 15-1. However, some edits should be required by this Court for fairness and to avoid confusion, including:

   1. The "RE:" line of the Notice should be amended to state: "Notice of Lawsuit and Right to Join". The wording proposed by Plaintiff indicates unpaid wages are already owed, which is misleading. Also, there should either be an underline for the entire line or none; only underlining the "Unpaid Wages lawsuit" wording is simply inflammatory.

   2. The "Introduction" paragraph should be moved to the first paragraph, and the wording in the "Time Sensitive" paragraph (currently (1)) should be moved to paragraph number 5.

   3. The "Description of Lawsuit" in paragraph 3 should be corrected. Also, there is a misstated gender pronoun in paragraph 4.

4. Finally, the first sentence of the second paragraph under "Effect of Joining this Suit" (paragraph 6) should be reworded as follows: "It is important to understand that you may be entitled to recovery if you worked hours "off the clock" that were unpaid while you were employed by Defendant." Plaintiff's statement is, again, misleading, and the modified sentence more accurately reflects his claims in this matter. *See* ECF No. 15-6, ¶¶ 11-13.

Defendants contend that these requested edits are reasonable and will ensure fairness to them without interfering with the Notice of Rights being disseminated among NSC's past and current Nashville location class members.

### III.   CONCLUSION

In light of the foregoing, Defendants respectfully request that the Court grant, in part, and deny, in part, Plaintiff's Motion for Conditional Certification, provide notices to the class members defined herein, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Gregory J. Northen (AR Bar No. 2011181)
Alexander D. Clark (AR Bar No. 2017112)
CROSS, GUNTER, WITHERSPOON &
 GALCHUS, P.C.
500 President Clinton Avenue, Suite 200
Post Office Box 3178 (72203)
Little Rock, Arkansas 72201
Telephone: (501) 371-9999
Facsimile:   (501) 371-0035
E-mail: gnorthen@cgwg.com
E-mail: aclark@cgwg.com

**ATTORNEYS FOR DEFENDANTS**

248390-2